**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

ERIN BLACK,

                 Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

_____

1:19-cv-17237-NLH

**OPINION**

**APPEARANCES:**

JENNIFER LILLEY STONAGE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002

    _On behalf of Plaintiff_

NAOMI B. MENDELSOHN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

    _On behalf of Defendant_

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income

_____

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number

("SSI")[2] under Title II and Title XVI of the Social Security Act.[3]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, January 1, 2014.  For the reasons stated below, this Court will affirm that decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On November 20, 2014, Plaintiff, Erin Black, protectively

---

of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled.  42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

filed an application for SSI and DIB,[4] alleging that she became disabled as of January 1, 2014.[5]  Plaintiff claims that she can no longer work at her previous job as a hand packager because she suffers from numerous impairments, including migraine headaches, major depressive disorder, bipolar disorder, generalized anxiety disorder, back pain, and hyperthyroidism.[6]

After Plaintiff's initial claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on February 16, 2018.  On June 25, 2018,

---

[4] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Plaintiff originally claimed an alleged onset date of January 1, 2012.  Plaintiff later amended this date to January 1, 2014.  (R. at 98.)  Even though Plaintiff contends that her onset date of disability is January 1, 2014, the relevant period for Plaintiff's SSI claim begins with her November 20, 2014 application date, through the date of the ALJ's decision on June 25, 2018.  See 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month she satisfies the eligibility requirements, which cannot predate the date on which an application was filed).  This difference between eligibility for SSI and DIB is not material to the Court's analysis of Plaintiff's appeal.

[6] Plaintiff was 33 years old at the time of the alleged disability onset date, which is defined as a younger individual (age 18-49).  20 C.F.R. §§ 404.1563, 416.963.

the ALJ issued an unfavorable decision.  Plaintiff's Request

for Review of Hearing Decision was denied by the Appeals

Council on June 24, 2019, making the ALJ's decision final.

Plaintiff brings this civil action for review of the

Commissioner's decision.

**II.  DISCUSSION**

   **A.   Standard of Review**

   Under 42 U.S.C. § 405(g), Congress provided for judicial

review of the Commissioner's decision to deny a complainant's

application for social security benefits.  Ventura v. Shalala,

55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must

uphold the Commissioner's factual decisions where they are

supported by "substantial evidence."  42 U.S.C. §§ 405(g),

1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.

2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000);

Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Substantial evidence means more than "a mere scintilla."

Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting

Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).

It means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Id.  The inquiry

is not whether the reviewing court would have made the same

4

determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

5

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although
an ALJ, as the fact finder, must consider and evaluate the
medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart,
94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial
review, a district court is not "empowered to weigh the
evidence or substitute its conclusions for those of the fact-
finder." Williams, 970 F.2d at 1182.  However, apart from the
substantial evidence inquiry, a reviewing court is entitled to
satisfy itself that the Commissioner arrived at his decision
by application of the proper legal standards.  Sykes, 228 F.3d
at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir.
1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

6

**B.   Standard for DIB and SSI**[7]

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he

---

[7] As noted previously, the standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted); see also, Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (because the law and regulations governing the determination of disability are the same for both DIB and SSI the Court provided citations to only one set of regulations).

applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[8] for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

---

[8] The regulations were amended various provisions effective for claims filed after March 27, 2017.  See 82 F.R. 5844.  The parties do not argue that any of these amendments are applicable to Plaintiff's appeal because Plaintiff filed her claim in November 2014.

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is
therefore dependent upon a finding that the claimant is
incapable of performing work in the national economy.

This five-step process involves a shifting burden of
proof.  See Wallace v. Secretary of Health & Human Servs., 722
F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of
the analysis, the burden is on the claimant to prove every
element of his claim by a preponderance of the evidence.  See
id.  In the final step, the Commissioner bears the burden of
proving that work is available for the Plaintiff: "Once a
claimant has proved that he is unable to perform his former
job, the burden shifts to the Commissioner to prove that there
is some other kind of substantial gainful employment he is
able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir.
1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir.
1983).

### C.   Analysis

At step one, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found that Plaintiff's
impairments of migraine headaches, major depressive disorder,
bipolar disorder, and generalized anxiety disorder were

severe.  At step three, the ALJ determined that neither
Plaintiff's severe impairments nor her severe impairments in
combination with her other impairments equaled the severity of
one of the listed impairments.  The ALJ then determined that
Plaintiff was unable to perform her past relevant work as a
materials and package handler, but Plaintiff's residual
functional capacity ("RFC") enabled her to perform unskilled
work at all exertional levels[9] with certain restrictions.  The
ALJ consulted a vocational expert ("VE"), who testified that a
person with Plaintiff's RFC could perform jobs which exist in
significant numbers in the national economy, such as a
cleaner/polisher, finish inspector, and garment sorter (steps
four and five).

Plaintiff argues that the ALJ erred in four ways.
Plaintiff argues the ALJ: (1) failed to assign any limitations
to Plaintiff's severe migraines; (2) failed to consider
Plaintiff's kidney stones, and their impact on Plaintiff's
back pain, and failed to assign any limitations for her back
pain; (3) erred by dismissing the treating source opinion of

---

[9] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light,
medium, heavy, and very heavy.").

Christina Evans, LSW; and (4) erred in rejecting the third-party function report of Plaintiff's husband.

The Court finds all of Plaintiff's arguments present her disagreement with how the ALJ assessed the record evidence rather than showing that the ALJ's findings are not properly supported by substantial evidence.

First, with regard to Plaintiff's migraines, Plaintiff argues that even though the ALJ found them to be a severe impairment, the ALJ did not account for this impairment in the RFC determination.[10]  Plaintiff further argues that to the extent the ALJ's RFC finding that she could have frequent exposure to loud noise is directed at Plaintiff's migraines, that finding is contradictory to the evidence that her migraines are severe, and that loud noise exacerbates her migraines.

When making the RFC determination, the ALJ is required to "consider all [a claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be

_____

[10] A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner rather than any medical source, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529.  The ALJ squarely found that even though Plaintiff suffered from migraines, the "objective medical evidence and other evidence" did not support a more limiting restriction in the RFC.

The ALJ noted that Plaintiff's headaches improved with medication, and were described as "good" and "clinically stable" by numerous treating providers.  (R. at 104.)  The ALJ explained that neurological examinations were consistently normal, they documented no focal or neurological deficits, and Plaintiff's EEG study was entirely normal.  (Id.)  Additionally, Plaintiff testified that she no longer required prescription medication to treat her occasional headaches, and she instead treated them with over-the-counter Excedrin.  (R. at 144-45.)

Plaintiff argues that the ALJ should have more fully explained his finding that Plaintiff was able to be exposed to frequent noise and provide a more significant limitation to accommodate for her migraines, but Plaintiff fails to point to any medical source that found Plaintiff had any functional limitations related to her migraines.  The medical evidence documented by the ALJ, along with Plaintiff's testimony,

demonstrates that the ALJ's assessment of Plaintiff's migraines to be fully supported.

Next, Plaintiff argues that the ALJ erred at step two by not finding her kidney stones and resulting back pain to be severe, and even if that finding is correct, the ALJ was still required to consider her back pain as a non-severe impairment in combination with her other severe impairments, which he failed to do. Plaintiff is correct that the RFC assessment must take into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). The ALJ, however, did not fail to undertake this analysis.

Plaintiff suffered from kidney stones in 2012, and Plaintiff states that from 2012 through 2015 her medical records show multiple references to Plaintiff's back pain, including treatment with various medications. Plaintiff,

however, does not point to any medical evidence or testimony that demonstrates any limitations from this back pain.[11] Plaintiff's pain in 2012 through 2015 does not compel any limitations in her RFC in 2018 when neither she nor her physicians have articulated how that pain has affected her daily living activities and her ability to perform basic work activities.  See 20 C.F.R. § 404.1522.[12]  Thus, the ALJ's

---

[11] The record shows that in March 2014, an ultrasound revealed no kidney stones or hydronephrosis, and a March 2015 examination documented no kidney related symptoms or complaints.  The record further shows that Plaintiff's complaints of back pain to her doctors arose out of an injury from dancing in September 2014 (R. at 788) and a lumbar puncture in January 2015 (R. at 581).  In March 2015, Plaintiff advised her doctor that her back pain was "ok" and the doctor recommended treating any residual pain conservatively with stretching, massage, heat, and NSAIDs. (R. at 766.)

[12] The regulation states:

What we mean by an impairment(s) that is not severe.

(a) *Non-severe impairment(s).* An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;

14

conclusion that Plaintiff's back pain imposed "less than a minimal limitation on the claimant's functioning" (R. at 101) is not contrary to any record evidence, and therefore does not constitute reversible error.

Plaintiff's third basis for appeal concerns Plaintiff's argument that the ALJ erred by dismissing the opinions of one of Plaintiff's treating sources – Christina Evans, LSW – and improperly disregarded the significance of Plaintiff's Global Assessment of Functioning ("GAF") scores.

On these two issues, the ALJ found:

> The undersigned considered the January 30, 2018 opinion of Christina Evan[s], LSW (Exhibit 16F) and gives it little weight because it is not consistent with the overall record including normal behavior, controlled symptoms and no significant cognitive difficulties, and her own reported findings (Exhibit l 7F). Little weight is given to the Global Assessment of Functioning (GAF) scores in the record of 50-55 and 60 (Exhibits lF at 14, l0F at 12, and l 7F), as they are snapshots in time and not a longitudinal representation of the claimant's functioning.

(R. at 105.)

---

        (3) Understanding, carrying out, and remembering
        simple instructions;
        (4) Use of judgment;
        (5) Responding appropriately to supervision, co-
        workers and usual work situations; and
        (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522.

Plaintiff argues that the ALJ's conclusion as to Ms. Evans' opinions is "simply incorrect" because Ms. Evans' opinions were consistent with the medical record.  This argument fails for several reasons.  As a primary matter, the ALJ was not required to consider the opinions of Ms. Evans because as a licensed social worker she was not considered to be an acceptable medical source.[13]  Second, Ms. Evans' entire opinion is provided via a check-the-box form, which is considered "weak evidence."  Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); Zonak v. Commissioner of Social Sec., 290 F. App'x 493, 497 (3d Cir. 2008) (affirming the ALJ's rejection of the plaintiff's treating physician's opinion because it was provided on a check-box form and no reasons were given in support of the doctor's conclusion on that form).

---

[13] The regulations in effect at the time of the ALJ's 2018 decision provide that social workers, nurse practitioners, and therapists are not acceptable medical sources who were entitled to provide medical opinions.  20 C.F.R. §§ 404.1502(a), 416.902(a).  On March 27, 2017, the regulations changed to include licensed social workers as acceptable medical sources within their licensed scope of practice. Because Plaintiff filed her claims in November 2014, this amended regulation is not applicable here.

Third, the opinions expressed by Ms. Evans are not corroborated by, and are actually contradicted by, other medical sources.  In January 2018, Ms. Evans checked the selections for marked limitations in understanding, remembering, and applying information; marked limitations in concentration, persistence, or pace; and being off-task 25 percent of the workday.  Plaintiff argues that the ALJ erred in not accepting these opinions, but the ALJ fully explained the evidence that supported their rejection:

> [T]he claimant's Beck Depression Inventory suggests merely mild depression.  Her Beck Anxiety Inventory indicated no more that mild anxiety.  A Personality Assessment Screener was normal.  Her depression was under control.  Both depression and anxiety were noted as stable.  Her attention and concentration appeared intact, her insight and judgment were good, and her recent and remote memory was intact.  Her thought processes were logical and goal-directed.  She has subjective memory loss, but cognitive testing showed no evidence of compromised or impaired functioning with good functioning and no signs of weakness.  Her behavior was normal on examination with normal mood and affect.  She had normal attention and concentration.  She was discharged from an intensive outpatient program due to poor attendance resulting since she was working because of her husband's mental health issues.  At home, her relationship with her husband was a major factor contributing to her symptoms, but subsequently both of them reported that the claimant was doing well and was not depressed or manic.

(R. at 104 (internal citations omitted).)

Other than preferring Ms. Evans' opinions over the remainder of the record evidence, Plaintiff has failed to show

that the ALJ's assessment of Ms. Evans' opinions is not supported by substantial evidence.

As for Plaintiff's GAF scores,[14] Plaintiff argues that "nowhere in Social Security policy is an ALJ to reject, in totality, every GAF score in a file simply because it is a GAF score," particularly where, as here, Plaintiff's GAF scores were consistent with her condition at the time the GAF score was assessed.

A GAF score is evidence that is to be assessed like all other medical evidence in the record, and the weight of its impact on a claimant's RFC depends on whether it is well supported and not inconsistent with other evidence.  See Hughes v. Comm'r Soc. Sec., 643 F. App'x. 116, 119 (3d Cir. 2016) (noting "that the latest edition of the Diagnostic and

_____

[14] The Global Assessment of Functioning ("GAF Scale") ranges from zero to one-hundred.  An individual's "GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range."  "[I]n situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two."  "In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care."  Gulin v. Commissioner, 2014 WL 1466488, 4 n.2 (D.N.J. 2014) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-TR")).

18

Statistical Manual of Mental Disorders abandoned the GAF scale as a measurement tool," and that an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence."). Here, the ALJ did not discount Plaintiff's GAF scores simply because of the type of evidence it represented, but rather the ALJ found Plaintiff's GAF scores were inconsistent with the remainder of the record evidence aside from that one moment in time when the scores were assessed.  In this way, it was assessed as all other record evidence.  In other words, Plaintiff's level of functioning may have been accurately reflected by the score assessed at that time, but the record evidence does not demonstrate that Plaintiff maintained the assessed level of functioning beyond those moments.[15]  The ALJ

---

[15] Plaintiff was assessed GAF scores of 50-55 and 60.  (R. at 105.)  The Court notes that a GAF of 51-60 is "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g.. few friends, conflicts with peers or co-workers)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-TR") p. 34.  In contrast, a GAF of 41-50 is "Serious symptoms (e.g.. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  A GAF of 31-40 is "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in

properly considered Plaintiff's GAF scores in his assessment of Plaintiff's RFC.

Finally, Plaintiff argues that the ALJ did not properly consider a third-party function report prepared by Plaintiff's husband.  As noted above, the ALJ related, "[L]ittle weight is given to the 3rd party function report submitted by the claimant's husband (Exhibit 6E) as he is not an objective source of information and, like the claimant's allegations, his report is not consistent with the evidence."  (R. at 105.) Plaintiff argues that the ALJ failed to point to any objective evidence on the record that contradicts Plaintiff's husband, and that the ALJ failed to provide that actual evidence used to evaluate the credibility of Plaintiff's husband's testimony.

Plaintiff's argument is unpersuasive.  It is Plaintiff's burden to show that the ALJ's decision is not supported by

---

several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."  A GAF of 21-30 is "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

substantial evidence, and in doing so, Plaintiff must present
evidence that the ALJ overlooked, failed to consider, or
improperly misconstrued.  While Plaintiff contends that the
evidence in the record corroborates her husband's report of
her limitations, Plaintiff does not set forth what that
evidence is.  In contrast, as detailed above with regard to
Plaintiff's other arguments, the ALJ explained with citation
to record evidence how Plaintiff's medically determinable
impairments could reasonably be expected to cause the symptoms
she alleged, but Plaintiff's claims regarding the intensity,
persistence and limiting effects of these symptoms were not
entirely consistent with the medical evidence and other
evidence in the record.  (R. at 101-102; 104-105.)

Moreover, the ALJ complied with SSR 06-03p, which was in
effect at the time of Plaintiff's claim.  See SSR 06-03p
(effective for claims filed before March 27, 2017, 82 F.R.
5844) (providing six factors when considering "other
nonmedical sources," including "How consistent the opinion is
with other evidence; The degree to which the source presents
relevant evidence to support an opinion"; see also Zirnsak v.
Colvin, 777 F.3d 607, 613 (3d Cir. 2014) ("In evaluating the
lay testimony of Zirnsak's family, friends, and husband, the

ALJ explicitly followed the guidance set forth in SSR 06-03p. He evaluated the relevant factors, assessed the credibility of certain evidence, and explained why he found certain evidence to be not credible."). Thus, the ALJ's assessment of Plaintiff's husband's third-party function report was not in error.

## III. CONCLUSION

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations. Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal is that a district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). The Court finds in this case the ALJ's determination that Plaintiff was not totally disabled as of January 1, 2014 is supported by substantial evidence. The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date:  August 14, 2020              s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.